OSCAR BUNDY and JAMES BUNDY, executors, &c. of James Bundy, deceased, *vs.* CLARISSA M. BUNDY, ELLEN R. BUNDY and others.

A testator, by his will, devised and directed as follows: 1. "I will and devise unto my wife, C., and E. R. the daughter of J. B. all my real and personal estate, property, assets and effects, subject to my debts. 2. I also further will and direct that in case either the said C. should die without heirs, or that the said E. R. should die without heirs, that the proceeds invested *for* either so dying, after sale of my said personal property, shall be equally distributed among the heirs at law of my mother. 3. And I further will and direct that my executors, hereinafter to be named, sell and convey my real estate and convert my personal property into cash; also that *the said executors invest* the proceeds of the sale of both my real and personal property in bond and mortgage, or other good securities. 4. I also will and direct that the said C. and the said E. R. *use*, respectively, so much, or *enjoy* the use of, so much of the interest arising out of the said bonds and mortgages or said other securities, or both, as shall be *necessary and proper* for their maintenance and support, and that if the interest be not sufficient for such maintenance and support, then they or either of them shall *receive* funds for such support from the principal *so invested.* 5. And I hereby will and direct that the said proceeds from the said real estate and the said personal property be equally divided between my said wife and the said E. R., and that *whenever* the said *investments* are made, that they be made *to* each separately, *or in the name of each separately,* &c. 6. The above gifts, bequests and devises to my said wife are made in lieu of dower, and I hereby appoint J. B., O. A. B. and my wife, C., my executors," &c.

Neither the testator, nor his widow, C., had any child. E. R. was his neice. The widow accepted the gifts, devises and bequests to her in lieu of dower. The executors had converted the real and personal estate into money, and, having paid the testator's debts, they had about $6000 remaining, of the proceeds of the estate. In an action for the construction of the will:

*Held* 1. That the first clause of the will was qualified by subsequent clauses, if the latter showed that the testator intended to qualify the former; and that it was clear such was his intention.

2. That the widow and E. R. had each the right, by the will, to use or enjoy so much of the interest, or interest and principal, of one half of the surplus proceeds of the estate, as should be necessary and proper for her maintenance and support during life. But that neither was constituted, by the will, the judge as to how much of the interest, or interest and principal of one half of such proceeds should be necessary and proper, at any time, for her maintenance and support.

3. That hence, the clause in the will, declaring that if either should die without heirs, the share of the proceeds of the estate invested for the one so dying should be equally distributed among the heirs at law of the testator's mother,

was valid; and that neither the widow nor E. R. was entitled to one half of such proceeds absolutely, without limitation or restriction. But that each would take one half of those proceeds absolutely, if the will authorized them to use or enjoy the interest thereon, and the principal as they should deem necessary and proper for their maintenance and support. And that in that case the limitation over to the heirs at law of the testator's mother would be void.

4. That the heirs at law of the testator's mother had therefore a contingent interest, by the will, in the surplus money or proceeds of the estate.

5. That the intention of the testator was that his executors should retain in their hands the proceeds of his estate, after paying his debts; and that, in their representative characters, and as trustees, they should invest one half of such proceeds separately, as the funds of his widow, and the other half of such proceeds, separately, as the funds of E. R.; and that in their representative characters, and as trustees, they should receive the interest on such investments, and pay over, from time to time, to his widow, such portions of the interest, or interest and principal, of the funds invested as her money as should be necessary and proper for her maintenance and support; and that in the same capacity they should pay over to E. R. such portion of the interest, or interest and principal invested as her money as should be necessary and proper for her maintenance and support; and that the executors, in their representative characters and as trustees, should keep a separate account of the funds invested for the widow, the interest received therefor, and of the money paid over to her; and that in the same capacity they should keep another and separate account of the funds invested for E. R., the interest received therefor, and of the money paid over to her.

6. That there was no legal difficulty in giving effect to the intention of the testator as to the powers and duties of the executrix and executors, except that the executrix could not act as trustee for herself. She could not be both trustee and *cestui que trust.* But that this might be avoided by the executors taking exclusive control of the half of the proceeds of the estate which was to be invested as the funds of the widow.

7. That inasmuch as the will did not constitute the widow, or E. R. the judge as to how much of the proceeds of the estate would be necessary and proper, at any time, for her maintenance and support; nor authorize the executors, as such, or as trustees, to determine the amount that should be paid to either of them, at any time, for her maintenance and support, such amount must be fixed by the court. The executors and trustees were accordingly directed to pay over to E. R., or her guardian, the interest that should from time to time accrue on the one half of the proceeds of the estate that should be invested as her funds; and the like as to the widow; with leave to either to apply to the court, from time to time, for further orders for the payment of principal or interest.

8. That the second clause of the will should be construed to direct that in case either C. or E. R. should die without issue, or heirs of her body, the proceeds

Bundy *v.* Bundy.

of the estate invested for either (should any be left) should be equally distributed among the heirs at law of the testator's mother.

9. That the executors and executrix should be required to give security, to be approved by a justice of this court, for the faithful execution of their duties and trusts as executors and executrix.

THIS was an action to obtain a judicial construction of the last will and testament of Laartus Bundy, deceased. It was tried at the Otsego special term, in August, 1865, and judgment was entered in it, on the 30th day of December, 1865, in the office of the clerk of Otsego county. All parties, who appeared in the action, appealed from the judgment to the general term of this court.

*George Brooks,* for the plaintiffs.

*S. Crippen,* for the defendant Clarissa M. Bundy.

*J. E. Dewey,* for the defendants Ellen R. Bundy and Frances McCall.

BALCOM, J. The will of Laartus Bundy, deceased, is in the words and figures following, viz:

1. "I will, give and devise unto my wife Clarissa M. Bundy, and Ellen R. Bundy, the daughter of James Bundy, all my real and personal estate, property, assets and effects, subject to my debts.

2. I also further will and direct that in case either the said Clarissa M. should die without heirs, or that the said Ellen R. should die without heirs, that the proceeds invested *for* either so dying, after sale of my said personal property, shall be equally distributed among the heirs at law of my mother.

3. And I further will and direct that my executors, hereinafter to be named, sell and convey my real estate and convert my personal property into cash; also, that *the said executors invest* the proceeds of the sale of both my real and personal property in bond and mortgage or other good securities.

4. I also will and direct that the said Clarissa M. and the said Ellen R. *use*, respectively, so much, *or enjoy* the use of so much of the interest arising out of the said bonds and mortgages or said other securities, or both, as shall be *necessary and proper* for ·their maintenance and support, and that if the interest be not sufficient for such maintenance and sup-· port, then they or either of them shall *receive* funds for such support from the principal *so invested.*

5. And I hereby will and direct that the said proceeds from the said real estate and the said personal property be equally divided between my said wife and the said Ellen R., and that *whenever* the said *investments* are made, that they be made *to* each separately, or one half to each separately, *or in the name of each separately*, and I hereby appoint my brother James Bundy the guardian of the said Ellen R.

6. The above gifts, bequests and devises to my said wife are made ·in lieu of dower; and I do hereby appoint the said James Bundy and Oscar A. Bundy, my brothers, and my wife Clarissa M.. my executors of this my last will and testament."

The testator had no child, nor has his widow, Clarissa M. any child. His widow is a little over twenty-eight years of age ; and Ellen R. Bundy is a little over thirteen years old. The latter is a niece of the testator.

The plaintiffs, as executors, and the widow as executrix, of the will, have converted the real and personal estate, left by the testator, into money and have paid his debts ; and they have about six thousand dollars remaining of the proceeds of the estate. They desire to know what they shall do with this money ; and all the parties ask for information from the court as to their rights under the will in·question.

The widow of the testator accepted "the gifts, bequests and devises" to her in lieu of dower ; and she has acted as executrix of the will with the plaintiffs, as executors.

The figures prefixed to the clauses of the will are not in

the original, but have been placed there by me for convenience in referring to the different provisions in it.

Is is clear that the first clause of the will is qualified by subsequent ones in it, if the language of the latter shows that the testator intended to qualify the former. · And no argument is necessary to prove that such was his intention. (*See* 3 *Kern.* 273 ; 16 *N. Y. Rep.* 83.)

The widow has the right, by the will, to "use" or "enjoy" so much of the interest or interest and principal of one half of the surplus money or proceeds of the estate of the testator, now in the hands of the executors and executrix, "as shall be necessary and proper" for her "maintenance and support" during her life ; and Ellen R. Bundy has the right, by the will, to "use" or "enjoy" so much of the interest, or interest and principal of the other half of such money or proceeds "as shall be necessary and proper" for her "maintenance and support" during her life. But neither the widow · nor Ellen R. is constituted, by the will, the judge as to how much of the interest, or interest and principal of half of that money or proceeds "shall be necessary and proper," at any time, for her maintenance and support. Hence the clause in the will, declaring that if either should die "without heirs," the share of the proceeds of the estate "invested for" the one so dying, "shall be equally distributed among the heirs at law" of the testator's mother, is valid ; and neither the widow · nor Ellen R. is entitled to half of such proceeds absolutely, without limitation or restriction. But each would take half of those proceeds absolutely, if the will authorized them to "use" or "enjoy" the interest thereon and principal, as *they* should deem "necessary and proper" for their maintenance and support ; and in that case the limitation over to the heirs at law of the testator's mother would be void. (*See* 3 *Kern.* 273 ; 22 *N. Y. Rep.* 558.)

It follows, that the heirs at law of the testator's mother have a contingent interest, by the will, in the surplus money or proceeds of the estate.

The proceeds of the estate are mentioned in the second clause of the will as being "invested for" either the widow or Ellen R. In the third clause the testator directs his *executors* to invest the proceeds of the sale of both his real and personal property in bond and mortgage, or other good securities. In the fourth clause he speaks of his widow and Ellen R. *receiving* funds for their support from "the principal *so* invested;" and in the fifth clause he declares, "that *whenever* the said investments are made, that they be made *to* each separately, or one half *to* each separately, or *in the name* of each separately." He nowhere directs or intimates that his widow, in her individual capacity, or Ellen R. shall invest any of the proceeds of his estate. And I am of the opinion the intention of the testator, as manifested by his will, was that his executors and executrix should retain in their hands the proceeds of his estate after paying his debts; and that, in their representative characters and as trustees, they should invest one half of such proceeds, separately, *as* the funds of his widow, and the other half of such proceeds, separately, *as* the funds of Ellen R.; and that, in their representative characters and as trustees, they should receive the interest on such investments, and pay over, from time to time, to his widow such portions of the interest, or interest and principal of the funds invested *as* her money, "as shall be necessary and proper for her maintenance and support;" and that in the same capacity they should pay over, from time to time, to Ellen R. such portion of the interest, or interest and principal invested *as* her money, "as shall be necessary and proper for her maintenance and support;" and that the executors, in their representative characters and as trustees, should keep a separate account of the funds invested for the widow, the interest received therefor, and of the money paid over to her; and that, in the same capacity, they should keep another and separate account of the funds invested for Ellen R. the interest received therefor and of the money paid over to her.

If the widow or Ellen R. were to take one half of the pro-

ceeds of the estate under her own control, the direction in the fifth clause of the will, that each half share be invested separately, *whenever* an investment is made, was unnecessary, and the direction in the third clause, that the *executors* invest the proceeds of the estate, might as well have been left out of the will.

There is no legal difficulty in giving effect to the intention of the testator as to the powers and duties of the executrix and executors of the will, except that the executrix can not act as trustee for herself. She can not be both trustee and *cestui que trust.* But this may be avoided, without materially thwarting the design of the testator, by the executors taking exclusive control of the half of the proceeds of the estate which is to be invested as the funds of the widow. And I think the executors should be empowered and directed to do that. But the widow, as executrix and trustee, should act with the executors in respect to the other half of such proceeds, which is to be invested as the funds of Ellen R.

My conclusion, that the executors should retain the control of the proceeds of the estate and invest the same, &c. as I have said they should, is sustained by the following authorities : 2 *Barb. Ch.* 211 ; 2 *Paige, Ch.* 122 ; 8 *id.* 152 ; 22 *N. Y. Rep.* 558.

I have already said that the will does not constitute the widow or Ellen R. the judge as to how much of the interest or principal of the proceeds of the estate of the testator " shall be necessary and proper," at any time, for her maintenance and support ; nor does the will authorize the executors, as such or as trustees, to determine the amount of interest or principal that should be paid to either of them, at any time, for her necessary and proper maintenance and support. The will being silent on this question, such amount must be fixed by the court. And I am of the opinion we should now direct the executors and trustees to pay over to Ellen R. or her guardian, the interest, from time to time, that shall accrue, after the entry of judgment in conformity with

this opinion, on the half of the proceeds of the estate that shall be invested as her funds ; and to pay over to the widow the interest, from time to time, as she may want it, that shall accrue, after the entry of judgment as aforesaid, on the other half of such proceeds that shall be invested as her funds. Leave should be given by the judgment, to the widow or Ellen R. to apply to the court, from time to time, on due notice to the executors and trustees, for orders for the payment to the one making the application, of interest that has accrued, or that may accrue on the proceeds invested, or to be invested as her funds ; or for orders for the payment to the one making the application, of any or all of such proceeds invested, or to be invested, as her funds ; or for orders for the payment over of both such interest and principal at the same time.

The provision of the will which directs that in case either the widow or Ellen R. should die "without heirs," the proceeds invested for either, so dying, shall be equally distributed among the heirs at law of the testator's mother, must be construed by looking at all parts of the will, and by the light of circumstances that probably influenced the testator at the time of its execution.

The testator says, if his widow Clarissa M. or his neice Ellen R. "should die without heirs," the proceeds invested for either, so dying, shall go to "the heirs *at law*" of his mother. It is clear that he here refers to all heirs of his mother, whether descendants or collateral relatives. But I am of the opinion, where he speaks of heirs of Clarissa M. and Ellen R. he used the word in a restricted sense, and meant heirs of their bodies — lineal descendants. He does not say, if either should die without heirs *at law,* but if either should die " without heirs," his estate shall be distributed so and so, It is not at all probable he loved the father or mother of Ellen R. more than he did any other brother or any other sister ; or that he was more attached to the father, mother, brothers or sisters of his wife than to his relations by blood.

Bundy *v.* Bundy.

But the probabilities are to the contrary. The ages of Clarissa M. and Ellen R. were such that either might have children, and, if they should, his desire was that his property should eventually pass into the hands of such children. But the contingency of the death of either Clarissa M. and Ellen R. without any heir at law, in a collateral line, was so extremely remote, it is hardly possible he contemplated it.

. The rule is established, that when the word heirs is used in a will, so as to mean children or descendants, it is the duty of the court to give it that meaning, in construing the will. (*See Norris* v. *Beyea*, 3 *Kern.* 280.)

I am therefore of the opinion that the second clause of the will in question should be construed to direct, that in case either Clarissa M. or Ellen R. should die without issue or heirs of her body, the proceeds of the estate, invested for either, so dying, (if any should be left,) shall be equally distributed among the heirs at law of the testator's mother.

My conclusion is that the judgment appealed from should be modified and changed, in conformity with the foregoing views ; and that the taxable costs of all parties to the appeal should be paid by the executors and executrix, out of the funds of the estate in their hands.

Mason, J. dissented from the foregoing opinion, so far as it conflicts with the decision of the special term.

Parker and Boardman, JJ. concurred in the foregoing opinion, except that they thought the executors and executrix named in the will of the deceased should be required to give security, to be approved by a justice of this court, for the faithful execution of their duties and trusts as executors and executrix and trustees, under and in pursuance of the judgment to be given in conformity with the opinion. And they also thought the judgment should require that such security be given.

The foregoing opinion was therefore modified, so that it should conform to the above mentioned views of Justices PARKER and BOARDMAN.

So decided.

[BROOME. GENERAL TERM, November 20, 1866. *Parker, Mason, Balcom* and *Boardman,* Justices.]