## In the Matter of the Estate of WILLIAM A. KELLY, Deceased.

Surrogate's Court, Lewis County, March 23, 1938.

*Nathaniel E. Merrell,* for Edgar S. K. Merrell, as surviving trustee.

*Frank Bowman,* for George S. Reed, as one of the executors of the estate of Mary L. Kelly, deceased.

*Ehrich, Royall, Wheeler & Walter,* for J. Fred Kelly, William A. Kelly and Henry S. Kelly, remaindermen.

MORAN, S. A claim has been presented by John Porter, Louise Buckley Porter and George S. Reed, as executors of the last will and testament of Mary L. Kelly, late of the village of Lowville, Lewis county, N. Y., deceased, in the amount of $4,669.34, to Edgar S. K. Merrell, as surviving trustee of the estate of William A. Kelly, deceased, which amount is claimed to be due her estate from the estate of William A. Kelly for moneys alleged to have been expended by her for her support during the period from January 1, 1936, to the date of her death, in excess of all income received by her during such period from a trust fund set up by her husband under the fifteenth clause of his last will and testament. The claim was rejected by the surviving trustee, with his consent that its validity be tried and determined upon the judicial settlement of his account, which account has been duly filed and now brings the determination of the claim before the court.

William A. Kelly, a dentist, and his wife, Mary L. Kelly, lived for a number of years in Lowville, N. Y., where he engaged in his profession. Their residence and home was on one of the principal streets of the village, was well kept and cared for. No children were born of the marriage. William A. Kelly departed this life on April 3, 1922, a resident of this county. He left a will and codicil thereto, which were admitted to probate in this court on April 27, 1922. His will disposed of an estate of approximately $215,000. Provision was made therein for his widow, Mary L. Kelly, by a devise of his home and its contents, valued at approximately $6,500, and an absolute bequest of the sum of $60,000, together with the income from a trust fund under the fifteenth clause of the will, which reads as follows: " I give and bequeath to my Executors hereinafter named the sum of Fifty Thousand Dollars ($50,000), in trust nevertheless, to be safely invested by them and the Interest or Income therefrom paid semi-annually to my beloved wife, Mary L. Kelly during her life-time. However, if she should require more than the income for her care and support in the manner she has been accustomed to living, then in that event, I direct my Executors hereinafter named to pay to my wife, Mary L. Kelly, such sum or sums of the principal as may be necessary from time to time for her support in the manner she lived during

my life-time and at the death of my wife, Mary L. Kelly, the principal sum of Fifty Thousand Dollars ($50,000), or the remaining portion thereof, shall revert to and be. and become a part of my residuary estate." In addition to the property devised and bequeathed to Mary L. Kelly by William A. Kelly, she was possessed of property of her own, at the time of the death of William A. Kelly, in the amount of $15,000.

The residuary estate, under the will of William A. Kelly, passed to his three nephews, J. Fred Kelly, William A. Kelly and Henry Kelly, in equal shares.

The trust fund was set up pursuant to the fifteenth clause of said will by the executors and trustees therein named, namely, Mary L. Kelly, widow, Edgar S. K. Merrell and George Sherwood, who qualified and acted together until the death of George Sherwood on April 25, 1927; thereafter the two remaining trustees acted until the death of Mary L. Kelly on September 12, 1937.

A decree of judicial settlement was made and entered settling the accounts of the executors on the 27th day of December, 1922. By said decree it was determined: "That it was the intention of the testator to provide for the support and maintenance of his widow, Mary L. Kelly, in the fifteenth clause of his last Will and Testament; that said provision therein contained is a support provision." "That his residuary estate, including the remainder over of the trust fund created in and by the fifteenth clause of his said Will, should vest in his residuary legatees, the said J. Fred Kelly, William A. Kelly and Henry Kelly and that the remainder over of said trust fund of $50,000 is vested, one-third in J. Fred Kelly, one-third in William A. Kelly, and one-third in Henry Kelly, subject to be divested only by the exercise of the right and privileges conferred upon the executors and trustees under and by the fifteenth clause of decedent's said last Will and Testament."

Mary L. Kelly died testate on September 12, 1937. Her last will and testament was admitted to probate in this court on November 16, 1937, and John Porter, Louise Buckley Porter and George S. Reed, executors therein named, duly qualified and are now acting as such. Mary L. Kelly left an estate of over $80,000, composed of securities and personal in excess of $75,000 and her home valued at $5,000 or more. It is these executors who have filed the claim of $4,669.34 against the estate of William A. Kelly, which amount is claimed to be additional expense for the support of said Mary L. Kelly above the income received by her from the trust fund set up under the fifteenth clause of the will of William A. Kelly, from the period beginning January 1, 1936, and terminating at the death of Mary L. Kelly, and which claim was rejected by Edgar S. K. Merrell, the surviving trustee, as above set forth.

Edgar S. K. Merrell, the remaining trustee of said trust fund, petitioned this court for his accounting and filed his account in this court on December 11, 1937, from which it appears that the original trust of $50,000 is intact with an increase of principal of approximately $3,500 derived by the careful and judicious manner in which this fund was handled. It further appears from said account that Mary L. Kelly received the income from said trust from the date of death of William A. Kelly up to May 1, 1937, for which she duly signed receipts, which, among other things, acknowledged receipt of the full income to that date, approval of the account to her and the investments of which the trust consisted.

The contention of the claimant is that Mary L. Kelly was entitled to her total care and support from said trust fund and if the income was insufficient then she was entitled to the balance from the corpus. On the other hand, the contention of the trustee and remaindermen is that no application was made by her for additional payments, she having receipted for the income to May 1, 1937, she was estopped and her estate is now estopped from filing such a claim. That even though her estate is not estopped from submitting such a claim, she was compelled to exhaust her own income before she could apply for aid from the corpus of the trust. That under the will and decree hereinbefore mentioned, the trustees were the sole judges of her requirements as to any part of the principal of the fund.

Mary L. Kelly was one of the cotrustees of this trust and participated in selecting the investments. In fact, it is stipulated in effect that the bulk of her own investments were in like securities, namely, government bonds. Therefore, it is only fair to assert and for the court to deduce from the record, that the income from the trust fund together with her own income was amply sufficient for her needs. It is intimated in claimant's brief that Mrs. Kelly was too ill and because of infirmities was unable herself to demand her rights from her cotrustee during the period covered by the claim. However, during the early part of the period she was able to make a will disposing of a substantial estate, naming the claimants as her executors and one of them as her principal beneficiary. The uncontradicted evidence before this court is that the life beneficiary never made a request or demand from her cotrustee for any portion of the *corpus* of the trust, that she approved of the securities in which the funds were invested, and that at a time when some of the original securities were called and reinvestments were considered, Mrs. Kelly spoke of the safety of the principal being the primary consideration.

There is nothing in the terms of the will of the decedent that specifically states the trustees are the judges and that it is at their sole discretion as to whether or not Mrs. Kelly required more than the income for her care and support. I am unable to read into this will any language which confers that power upon the trustees. It is true some intimation is made to that effect in and by the decree of this court heretofore made, but a careful reading of that decree only says that the property is to be divested by the exercise of the rights and privileges conferred upon the executors and trustees under the fifteenth clause, and the fifteenth clause is silent as to any discretion by the trustees. In *Matter of Martin* (269 N. Y. 305, at p. 313) the court states: "Where a will is silent as to who shall determine the amount necessary for the care, support and comfort of a beneficiary, and the right to use principal is made dependent upon the needs of the beneficiary, a question is presented for judicial determination." (See, also, *Matter of Emmons*, 165 Misc. 192.)

I must, therefore, hold that the language of the will of the decedent did not give to the executors and trustees the sole power of determining the necessary requirements for the care and support of Mrs. Kelly. In other words, the language is not sufficiently broad to place the trustees in the arm chair of the testator for that determination.

The life beneficiary, semi-annually up to May 1, 1937, signed receipts acknowledging receipt by her of the income and for the period at least from January 1, 1936, approving the distribution of the income to her and the securities in which the fund was invested. May her representatives now claim successfully that she was entitled to more than the income from the trust for her needs, or are they estopped to assert such a claim? Surely they stand no better than the beneficiary stood in her lifetime; and, as was said in *Giles D. M. Co.* v. *Klauder-Weldon D. M. Co.* (233 N. Y. 470, at p. 477): "One who stands by and induces the belief that he assents will not thereafter be heard to complain of the act that another might have abstained from if dissent had been anounced." Therefore, I hold that by her actions and receipts to the trustees Mary L. Kelly is estopped to make a claim herself or through her representatives for any period up to May 1, 1937.

The claimants have urged the case of *Matter of Van Zandt* (231 App. Div. 381) as directly in point and the authority for their position here. The wording of the Van Zandt will is clear: "if the income from the testator's estate is not sufficient for her care, support and maintenance, the *corpus* is available for that purpose" (p. 383). Similar is the wording of the will in the case of *Rezzemini*

v. *Brooks* (236 N. Y. 184), where the wording of the will is quoted at the bottom of page 191: " if the income from my estate shall be insufficient for the proper support of my son, then in that event, I authorize and empower my said trustee to expend so much of the principal thereof as may be necessary for that purpose."

In the case at bar we have no such wording as in the two previous cases. The instant case falls directly in line with the recent decision of the Court of Appeals in *Matter of Martin* (269 N. Y. 305, at p. 312), wherein the court said: " The primary question in this class of cases always is, does the will constitute an absolute gift of support and maintenance which it makes a charge upon the income from the estate and upon principal? If so, then the private income of the beneficiary cannot be considered. If, however, the gift is of income coupled with a provision that the principal may be invaded in case of need, the private income of the beneficiary must be considered in determining whether such need exists."

In the case before us the wording of the will is even stronger than in the *Martin* case, as here the income provision is in one sentence; then a new sentence begins, " However if she should require more than the income for her care and support in the manner she has been accustomed to living, then and in that event, I direct my Executors hereinafter named to pay to my wife, Mary L. Kelly, such sum or sums of the principal as may be necessary from time to time for her support in the manner she lived during my lifetime," etc. There are no words of the testator to say the care and support shall be entirely from his estate.

I, therefore, hold that in this case Mary L. Kelly was entitled to have applied for her care and support a portion of the principal of the trust fund, only in the event that the income therefrom, supplemented by her independent income, was insufficient to provide for her support in the manner she had been accustomed to living; and, as her independent income was sufficient, coupled with the income from the trust fund, for that support, her estate, through her representatives, cannot recover from the estate of the decedent, William A. Kelly, the claim submitted here.

Let decree be entered accordingly, without costs. Commissions and allowances of attorneys for the estate will be fixed by the court upon five days' notice to remaindermen.