John M. Keane, S.
Sound legal principles, whether embodied in a statute or a court decision, are usually precise and clearly understood. Except in academic halls, where the abstract philosophical merits of these principles can be debated, such legal principles exist for use in the real world.
Disagreements concerning their application to factual situations spawn litigation that fully occupies the time of the courts. As a matter of inductive logic, it might be easy to assemble the particular items and arrive by the application of the legal principle to the general answer. However, most litigated matters, and particularly those involving the construction of wills, are far from being exercises in pure logic.
It is a cliché of the Bar that no will has a twin. More accurately, it might be said that no will requiring a determination by a court as to its construction is twin to another will requiring such determination by a court. Long and tedious hours are often spent reading decisions in a search for a will containing the exact language which the advocate can use to support his interpretation. It is rare indeed that such an exact example can be found in the reported oases.
In this accounting proceeding, a determination is sought concerning certain language in the will. As frequently happens in such cases, the facts are not in dispute, having been stipulated by the parties.
Walter L. Johnson died August 7,1959, leaving a last will and testament which has been duly admitted to probate by this court. The operative paragraphs of the will provided for a bequest of certain personal property of the value of $1,842.50 to his daughter, and for the devise of certain real property and bequests of certain personal property to his widow in the amount of $65,119.32. The residuary of $17,189.58 was divided into two equal parts each to be held m trust; one for the benefit or ms widow and tne ocner lor tne benent ol ms daugnter. Alter me deatn or ms widow, tne corpus was to oe transierred to me trust ior tne daugnter. The descendants oí tne daughter were the remaindermen, in addition, the widow received as the surviving joint tenant of a bank account.
*54 Thus, out of an adjusted gross estate shown in the estate tax return of $157,287.24, the widow received $138,355.16 outright and the benefit of $8,594.79 to be held in her trust. The daughter received $1,842.50 outright and the benefit of $8,594.79 to be held in her trust.
The controversy has arisen over the language of the will creating the trust for the benefit of the widow, which reads as follows:
‘1 FIFTH. * * *
‘ ‘ 2. If, at any time, in their sole and unrestricted judgment and discretion, my Trustees shall determine that the income from said trust shall not be adequate for the comfortable support and maintenance of my said wife, then and in that event, I authorize and empower my Trustees, from time to time, to encroach upon the principal of said trust fund and pay therefrom to, or for the benefit of, my said wife, such portion of the principal of said trust as, in their sole and unrestricted judgment and discretion, my Trustees may deem necessary and proper for the comfortable support and maintenance of my wife, provided, however, that the total encroachment upon, or payments from, principal, in any one calendar year, shall not exceed the sum of Three Thousand Dollars ($3,000.00).”
For purposes of comparison, the analagous provision for the trust for the daughter reads as follows:
‘ ‘ SIXTH. * * *
“ 2. If, at any time, in their sole and unrestricted judgment and discretion, my Trustees shall determine that the income from said trust, together with other assets at her disposal, shall not be adequate for the comfortable support and maintenance of my said daughter, then and in that event, I authorize and empower my Trustees, from time to time, to encroach upon the principal of said trust fund and pay therefrom to, or for the benefit of, my said daughter, such portion of the principal of said trust fund as, in their sole and unrestricted judgment and discretion, my Trustees may deem necessary and proper for the comfortable support and maintenance of my daughter.”
Decedent’s wife suffered a cerebral vascular accident in 1959, the year of his death. In the Fall of that year, she was adjudicated an incompetent. The medical and other expenses of her care from that time until her death on January 25, 1964, totalled almost $92,000.
Although letters of testamentary trusteeship have been issued to the trustees of each trust, neither trust has been funded at *55 the time of this accounting. Since the widow is now deceased, the executor proposes to deliver what would be the corpus of the trust for the benefit of the widow to the trustees for the benefit of the daughter without depletion for any invasions of principal for the benefit of the widow.
Strictly speaking, the decision on any invasion of principal would be that of the trustees of the trust for the widow. Since all parties are before the court and since the trustees have requested that the decree direct payment without reduction for any invasions, the matter will be determined in this proceeding.
In addition to the income to which it is entitled, the estate of the widow claims that under paragraph “ fifth (2) ”, there should be paid to it $3,000, the maximum amount allowed, for each year of the widow’s life up to the date of her death. As a matter of arithmetic, the corpus of the widow’s trust would be exhausted if this contention prevailed.
The legal principle involved here has been clearly enunciated in Matter of Martin (269 N. Y. 305, 312 [1936]), where the court stated: “ The primary question in this class of cases always is, does the will constitute an absolute gift of support and maintenance which it makes a charge upon the income from the estate and upon principal? If so, then the private income of the beneficiary cannot be considered. If, however, the gift is of income coupled with a provision that the principal may be invaded in case of need, the private income of the beneficiary must be considered in determining whether such need exists. ’ ’
In which category is the gift under this will? This is the first question to be answered.
Construction of wills with this problem is one that occurs frequently. In 1933, Mr. Surrogate Wingate stated, in Matter of Gatehouse (149 Misc. 648 [1933]) that, “An examination of reported cases on the subject indicates that this question is one of growing interest, since it has been raised almost as many times in the last decade as during the entire preceding period of New York legal history.”
In that decision, Mr. Surrogate Wingate critically analyzed the existing reported cases in which the question was involved. Since 1933, two decisions have been rendered by the Court of Appeals, each one standing for one of the principles. In Matter of Martin (supra) the court determined that the private income of the beneficiary could be considered because the gift of income was coupled with a provision that the principal may be invaded in case of need. Three years later, in Matter of Clark (280 N. Y. 155 [1939]), the court determined that the *56 private income of the beneficiary did not have to be considered because the gift was an absolute gift of support and maintenance which was a charge upon the income and principal.
A glance at the digests will show that this problem continues to plague the courts and probably will do so as long as variations in language occur. Both Matter of Martin (supra) and Matter of Clark (supra) have been cited upwards of 50 times in various reported cases considering the problem involved here. It would unduly lengthen this decision if an attempt were made to set forth the relevant language in each of the decisions and examine it critically. A recent review of the problem at some length is found in Matter of Levis on (29 Misc 2d 697 [1961]). (See, also, Matter of Bennett, 14 N. Y. S. 2d 178 [1989]; Matter of Kohlman, 60 N. Y. S. 2d 556 [1946]; Matter of Bender, 200 Misc. 768 [1951]; Matter of Rosenberg, 121 N. Y. S. 2d 874 [1953]; Matter of Stern, 34 Misc 2d 391 [1962]; Matter of Grubel, 37 Misc 2d 910 [1962], and Matter of Aschner, 43 Misc 2d 809 [1964].)
When the language of earlier cases, beginning with Holden v. Strong (116 N. Y. 471 [1889]), Rezzemini v. Brooks (236 N. Y. 184 [1923]), and that of Matter of Martin (supra) and Matter of Clark (supra) is compared with the language above quoted in paragraph “fifth (2) ” of the will of decedent, it appears to this court that the decedent intended to make an absolute gift of support and maintenance, which was a charge upon income and principal, and the court so decides. Therefore, the private income of the beneficiary cannot be considered in determining how much principal should be paid to the beneficiary.
In Matter of Clark (supra) the will provided: “ In the event that the income provided for my said wife under paragraph ‘ Fourth ’ above shall, in the judgment of my trustee, be insufficient for her every comfort and support, I authorize my said trustee to pay to her, in addition to income, such portion of the principal of the said trust as it shall from time to time deem necessary.” (Emphasis added.) This language is similar to that of decedent’s will herein. The test for invasion of principal is whether the income is sufficient for support, not whether or not she needs the principal.
It is true that the first part of paragraph “fifth (2) ” relates to the discretion of the trustees. However, the discretion of the trustees must be exercised within the framework of the principles applicable to the particular situation. The trustees have emphasized the broad language of the discretion given to them in deciding whether principal should be paid out. *57 This discretion does not exist in a vacuum. In football, the ball carrier has discretion to make a forward pass at any time — provided he is behind the line of scrimmage. Similarly the trustees here have discretion to invade principal if income is insufficient — provided that no consideration may be given to any other income of the beneficiary. By the papers filed herein, approval of the court has been sought to transfer what would be the corpus of the trust for the widow intact into the trust for the daughter pursuant to the will.
The court will not substitute its discretion for that of the trustees, but the court has the right to review any determinations made by the trustees exercising the discretion granted to them. It is clear that the trustees have believed it their obligation to consider the private resources of the widow before invading the principal.
Inasmuch as the determination made herein states that such private resources cannot be considered, it is clear that the income was totally insufficient for the “ comfortable support and maintenance of my said wife.” Under the facts as stipulated, it would be an unwarranted abuse of discretion on the part of the trustees if they refused to invade the corpus of the trust to the full extent permitted of $3,000 per year.
Therefore, to the extent that funds are available, the decree herein should direct that $3,000 per year out of the funds that would be the corpus of the trust for the widow (from the date of decedent’s death) should be paid to the representatives of the estate of decedent’s widow.
Although .the court has determined that the language of the will is sufficiently similar to many eases reaching the same conclusion, so that no further support for its decision is necessary, mention should be made of two other arguments to support the conclusion above reached.
Attention is called to the language of paragraph “ sixth (2) ” of the will of decedent, in which the trust is created for the benefit of his daughter. Examination reveals that the language is identical with that in paragraph “ fifth (2) ” except that mention is made that his daughter’s private resources must be considered. Of course, there is a limitation on the amount that can be paid to the widow, which does not exist in the trust for the daughter. If the decedent had desired that the resources of the widow be considered, why was not such language used in her trust? Such distinction in language makes the court believe that the draftsman was aware .of the different interpretations that would be given to the two different paragraphs.
On the facts of the matter, the same conclusion could well be *58 reached following Matter of Martin (supra). The income earned by the estate for the entire period of decedent’s widow’s life was 65,471.44. She would be entitled to half of this income. The income earned by the widow of decedent from her own property from 1959 through 1963 was $28,498.63, while expenses in the same period were almost $92,000. In substantially all of the cases following Matter of Martin (supra), mention is made that the income of the beneficiary is to be considered. In fact, Matter of Martin states (p. 312) that the beneficiary: “is entitled to have applied for her care, support and comfort a portion of the principal of the trust fund only in the event that the income from the trust fund supplemented by her independent income shall be insufficient to provide for her proper care, support and comfort.” (Emphasis added.)
Here, the income due the widow from the trust as well as her own private income did not pay even half of her expenses during the years of her disability. Therefore, by reason of the facts herein, the conclusion reached would be the same under Matter of Martin (supra), because the income of the widow from her own resources and the income payable under decedent’s will were together insufficient to pay her expenses.
Apportionment of estate taxes as proposed in the account will be approved. The decree shall direct the payment of $1,000 by the estate of the widow for services rendered by counsel for the executor on the estate tax apportionment.
Decision on the question relating to perpetual care of the family burial plot mentioned in paragraph “ first ” is reserved pending submission of additional evidence.