Otto C. Jaeger, S.
The court is asked to construe decedent’s will, more particularly article fourth which reads in part:
6 ‘ fourth : In the event that my son, Howard Pomeroy, shall be living at the time of my death, I give and bequeath to Corn Exchange Bank Trust Company of the Borough of Manhattan, City of New York, and to my daughter, Helen Pomeroy Burtis, and to their successors, in trust, the sum of Sixty Thousand ($60,000.00) Dollars, to invest and reinvest the said fund and to collect the interest and other income therefrom, and during the life of my son, Howard Pomeroy, and after deducting all proper charges and expenses, to pay the net income, during the life of the said Howard Pomeroy, to my daughter, Helen Pomeroy Burtis, and in case of her death, then to my son-in-law, E. Strong Burtis, and in case of his death, then to my nephew, James S. Alexander, hoping that my said daughter or my said son-in-law or my said nephew, as the case may be,. will expend so much of the income hereby given to them as shall be necessary to amply provide for the proper maintenance, support and comforts of my said son, Howard Pomeroy; and in the event of the deaths of the said Helen Pomeroy Burtis, E. Strong Burtis and James S. Alexander, then my trustee, Corn Exchange Bank Trust Company, shall apply so much of the income of the said trust as shall be necessary to the proper maintenance, support and comforts of my said son, Howard Pomeroy ; and upon his death, then I give and bequeath the said trust fund, to my daughter, Helen Pomeroy Burtis, absolutely; and in case of her death before that of the said Howard Pomeroy, then I give and bequeath the said trust fund, subject to the said trust, to the persons or person to whom she shall, by her Last Will and Testament appoint the same, and in case she shall fail to exercise such power of appointment, then I give and bequeath such trust fund, subject to the said trust, to her children, in equal shares, and in case she shall, fail to exercise such power of appointment and shall leave no child her surviving, then I give and bequeath the said trust fund as follows (Gifts over not pertinent here.)
*955 Decedent died March 20,1939. Her will was admitted to probate and letters of trusteeship were issued on June 13, 1939 to the petitioner, the 'Chemical Bank (formerly known as the Com Exchange Bank Trust Company) and decedent’s daughter, Helen Pomeroy Burtis. In addition to Helen, decedent was also survived by her son, Howard, her son-in-law, E. Strong Burtis and her nephaw, James S. Alexander. Helen died testate on March 28, 1972. Her husband, E. Strong Burtis, predeceased her. Her will was admitted to probate in this court on July 14, 1972. In an instrument dated June 19, 1972 and entitled “ Renunciation ”, James S. Alexander stated that he did thereby “ renounce, release and forfeit any and all right in the said Trust and in the net income derived from the said Trust.” The instrument recited its effective date as March 28, 1972. Alexander never accepted any benefits from the trust.
Petitioner states that decedent’s son, Howard, “has resided for most of his life in the Bancroft School” in New Jersey; that Howard has never been adjudged an incompetent; and that “ since the inception of the trust the net income has been paid to Helen Pomeroy Burtis, and she in turn has utilized this income to provide for the proper maintenance, support and comforts of Howard Pomeroy in accordance with the wishes of the testatrix. ’ ’ In her will Helen made provision for her brother Howard similar to that made by her mother. She gave her residuary estate, together with all property over which she had a testamentary power of appointment, to her trustees in trust with directions “ to pay the net income to my cousin, Gregory Gould, during the lifetime of my brother, Howard S. Pomeroy, with the wish that Gregory Gould will utilize this income, if necessary, for the support and maintenance of my brother.” In case of Gregory’s death, a similar gift of income was made to Richard W. Lahey, during Howard’s life, with the same wish. Helen named as her trustees Gregory Gould and the same trust company named by her mother.
Petitioner alleges that it believes that as a result of the renun-. elation of James S. Alexander and the deaths of the other named income beneficiaries, the trustee is now authorized to apply so much of the income as is necessary for the proper maintenance, support and comforts of Howard and that Howard’s maintenance, support and comforts were intended “to be an absolute charge on trust income ”. Petitioner requests the court (1) to authorize the trustee to apply the net income without consideration of Howard’s other income and resources; (2) to determine that the testamentary power of appointment was properly exer *956 cised by Helen’s will; and (3) to determine that any unexpended trust income shall annually be payable to the appointees designated in Helen’s will.
As a prerequisite to considering petitioner’s requests, the court must first determine that Alexander’s renunciation is effective. The court so determines (Matter of Matthiessen, 175 Misc. 466; Matter of Behn, 201 Misc. 12) and holds that the legacy to Alexander never became effective (Albany Hosp. v. Albany Guardian Soc., 214 N. Y. 435).
Proceeding now to the other matters, the court observes preliminarily that it would be a relatively simple matter for draftsmen of wills to state explicitly whether the independent income and resources of a beneficiary of trust income are to be considered in providing for the beneficiary’s maintenance, support and comfort. However, the absence of explicit language frequently casts upon the court the task of determining whether a testator intended the trustee to consider or to ignore the private income and resources of the trust beneficiary. ‘ ‘ Although the decisions in this area of the law place emphasis in the precise verbiage found in the provision creating the trust, close analysis reveals that they take into consideration more than such verbiage alone in seeking to ascertain the testator’s intent. The language may not, of course, be entirely disregarded but, as in every case in which a will is ambiguous or silent with respect to a controverted matter, it is the testator’s intent which must control, and we educe his design not only from the language employed but from a ‘ sympathetic reading of the will as an entirety and in view of all of the facts and circumstances under which [its] provisions * * * were framed.’ (Matter of Fabbri, 2 N Y 2d 236, 240; see, also, Matter of Clark, 280 N. Y. 155,160). ” (Matter of Flyer, 23 N Y 2d 579, 584.)
(1) Here it is significant that the article fourth trust provided for payment of income only and did not authorize any invasion of principal for any income beneficiary. It is also significant that the income beneficiary was, in the first instance, not Howard but Helen, then Helen’s husband and then testatrix-’ nephew. Testatrix used only precatory language {“ hoping ”) to indicate to the income beneficiaries her thoughts on their use of the income, or at least part of it. There was in the first instance no mandatory requirement that any of the income be used for Howard. After the death of the first three named income beneficiaries the corporate trustee was directed to apply “ so much ” of the income as necessary to the proper maintenance, support and comforts of Howard. Did this differ-
*957 ence in the disposition of net income, that is, from paying it to the daughter, son-in-law and nephew in contrast to the corporate trustee’s applying so much of it as necessary for Howard’s support, indicate an intention by testatrix that when the income interest of the three first-named beneficiaries ceased, the gift of income was thereafter to be an absolute gift of support. The court does not believe it did. Where an absolute gift of support is intended, a testator usually authorizes the use of principal as well as income (Holden v. Strong, 116 N. Y. 471; Bezzemini v. Brooks, 236 N. Y. 184; Matter of Martin, 269 N. Y. 305; Matter of Clark, 280 N. Y. 155; Matter of Aschner, 43 Misc 2d 809) and the gift of principal is as broad as the gift of income (Matter of Martin, supra). Here there is no authorization to use principal. The petition alleges that the present trust income is approximately $9,250 annually while expenses for Howard’s room, board and medical services approximate $9,600 annually. Yet there is no provision for making up the deficit. Upon all the facts and circumstances the court concludes that testatrix did not intend to give Howard an absolute gift of support. Consequently, Howard’s private income and resources, if any, should be considered by the trustee. The first request of the trustee is denied.
(2) The bequest by Helen in article third of her will to her trustees of all of the rest, residue and remainder of her property “ together with all property, if any, with respect to which I may, either before or after the date of this will, have a power of testamentary appointment” properly exercised for present purposes the power of appointment given Helen under article fourth of decedent’s will (EPTL 10-6.1).
(3) Since the petitioning trustee after considering the independent income and resources of Howard, may find itself with unexpended income, the disposition of the excess income must be determined. No provision is made in the will for the .accumulation of income. In fact, any such provision therein would have been contrary to the statute then in effect (Personal Property Law, § 16). Thus, the disposition of unexpended income must go to the person or persons entitled to the next eventual estate (St. John v. Andrews Inst. for Girls, 191 N. Y. 254; Real Property Law, § 63, now EPTL 9-2.3). The persons entitled to the next eventual estate here are the trustees under Helen’s will to whom she bequeathed the appointive property in article third of her will. Hence any unexpended income is payable to Helen’s trustees and will become part of the trust principal.
Settle decree.